We'll start with McLeod v. Bisignano. Case number is 25-2046. We'll first hear from counsel for the appellant. Mr. Bose, you've reserved three minutes for rebuttal. Yes, thank you, Your Honor. Good morning, and may it please the Court. My name is Christopher McCain-McLeod in this Social Security hearing. She challenges the decision that she retained the ability to perform what Social Security calls light work. Under the regulations, light work requires a good deal of standing and walking throughout an eight-hour day. It's understood through rulings that it requires standing and walking for six hours out of an eight-hour day. So in this case, the administrative law judge concluded that Ms. McLeod could persist for six out of eight hours of the day performing light work and therefore denied her case. However, in reaching that conclusion, the commissioner now recognizes that the ALJ relied on four doctors' opinions that we talk about in our briefs to support the conclusion that Ms. McLeod could perform light work. However, none of those four physicians reviewed the MRI of the left knee, showing grade 4 chondromalacia. So none of them reviewed it? We know that. Why? We know that because they don't mention it in their findings. The commissioner concedes that neither Dr. Puri or Dr. Shi, the two consultative Social Security physicians, reviewed the MRI. But isn't there evidence in the record that Dr. Passick and Dr. Semple reviewed the medical records, and the medical records would have included the MRI? The workers' compensation doctors lay forth all of the evidence that they considered before they get to the narrative or their examination. And when we look at those reports, the MRI of the left knee is not part of that list. So we submit that there's no proof that they looked at it. So Dr. Puri specifically said McLeod had an MRI of her left knee, right? Dr. Puri said that? Yeah, I think so. I don't think that Dr. Puri reviewed the file, though, which is what the commissioner agrees. And Dr. Puri doesn't characterize the MRI of the left knee as grade 4, which is significant. I thought Dr. Puri had reviewed the 567 x-ray. The x-ray is different from an MRI, because the x-ray doesn't show the same thing as an MRI does. So my understanding is that the only two doctors in this file who looked at the MRI of the knee were Newman, both of whom said- But even if they didn't look at the MRI directly, did they look enough so that one can say that what is generally like work? Now, you know it requires standing, but there are different kinds of like work. And it's hard to see that these doctors didn't all say, yes, there is a handicap. We know the knee is bad, but there is nothing here that suggests that she can't do any number of ordinary things. The only doctor who might suggest of a contrary was the workers' comp doctor who did see the MRI, but he was discounted by the ALJ, and you never really challenged that discounting, did you? The Dr. Semble said that Ms. McLeod could perform sedentary work. I don't believe that Dr. Semble looked at the MRI of the left knee either. And that's really our point, is that the MRI of the left knee shows advanced arthritis or damage to the left knee, which is inconsistent. I mean, isn't the ultimate point not whether surgery was required, but the effect of the injury to the left knee on your client? And the ALJ took into account the MRI. The ALJ concluded, every doctor concluded, that your client had pain in the knee and was disabled with respect to the knee. So is there a requirement that you single out any particular examination? Yes. I believe in this case, this Court's prior holding in Burgess said that when there is objective evidence of a condition, the judge can't ignore it. Now, none of the doctors looked at the significant MRI of the left knee. In Burgess, it says it's error to rely on a consultative doctor who did not review the critical MRI of the knee. You didn't even submit the MRI to the Social Security judge. And while Dr. Passick may not have looked at the MRI itself, Dr. Passick did look at reports that mentioned the MRI. So Dr. Passick and Dr. Semble were aware of the MRI. Isn't that right? I don't believe that that's true, Your Honor. I think if an orthopedist saw that there was an MRI showing grade 4 chondromalacia, that would have registered in their review in the same way that they discussed the x-ray. It doesn't make sense that they would cite one but not the other. For the record, Dr. Khoury's report says she had MRIs done of the knee. Right. So Dr. Khoury, because you said earlier you didn't think he had mentioned the MRIs or she had mentioned the MRIs. I apologize, Your Honor. So your argument is not that they weren't aware of it. Your argument is that even though several of the doctors indicated clearly that they were aware the MRI had been conducted, that they ignored it, and so even though you just said that it would make no sense for a doctor to see there was an MRI and not consider it. Dr. Khoury did not review Ms. McLeod's medical file. Ms. McLeod probably said at the appointment, oh, I've had an MRI of the back, I've had an MRI of the knee. That does not mean that Dr. Khoury understood what those MRIs showed. Dr. Khoury never reviewed the file that you have in front of you. Okay, but Dr. Passick did review the file, right? So far as I know, Dr. Passick reviewed the things listed in his report, which does not include the MRI. Right, does not include the MRI itself, but does include the reports that reference the MRI and the MRI findings, correct? Yes, this gets to be a little tenuous in terms of objective evidence and support. I don't know that they, there's nothing in their reports that say, oh, she also has MRI shows, grade 4 chondromalacia, and two doctors suggested that she would need surgery. That's not present in those reports. Is the ALJ supposed to go behind it? If a doctor lists what the doctor believes is significant from all of the material that the doctor has reviewed, the material the doctor has reviewed includes the reports with respect to the MRI, not the MRI itself, but the reports with respect to the MRI, and the doctor in his or her professional judgment doesn't deem it important to highlight the MRI. Is the ALJ supposed to discount the report for that reason? We think the answer is yes, Your Honor. In Fiorello, the Court said, this Court said that we cannot, we're not expecting the judge to recite every piece of evidence in the record. However, we cannot accept the unjustified rejection of the favorable evidence in the record. And I submit to you that grade 4 chondromalacia is significant. But the ALJ in this case did reference the MRI. The ALJ was aware of the MRI. She did. And as a layperson, she says, there's an MRI showing grade 4 chondromalacia. And then the next, she says, but there's also an X-ray showing mild limitations. So our point is that it's not for the ALJ to decide the importance of grade 4 chondromalacia. Just as in Burgess, the Court held that where the consultative examiner is blind with respect to critical evidence, that report cannot, that's a flaw in reliance on that evidence. That's what the Court said in Burgess. The Court then talked about the effect within the context of the treating physician rule. But the Court said that if you're relying on a doctor who wasn't, didn't see or didn't include the findings of the MRI in their testimony, that's a flaw in the reliance on that evidence. I'm sorry. All right. Well, we'll see you again on rebuttal. You have reserved three minutes. Oh, okay. I missed a lot of my argument. Okay. I understand we have your briefs, and, of course, we reviewed the full record. Thank you. We'll hear from counsel for the appellee, Ms. Olgin. How close was I? Pretty close. All right. Good morning. May it please the Court. My name is Natasha Olgin, and I represent the Commissioner of Social Security. The ALJ reasonably found that Ms. McLeod could do a range of light work that did not require any significant bending of her back or her knees. This is directly supported by at least four medical opinions, Dr. Randall, Dr. Pasek, Dr. Zee, and Dr. Puri. They all found that she was capable of light exertion or was no more than moderately limited as to exertion, or with bending, squatting, kneeling, or climbing stairs. The ALJ agreed. She found that Ms. McLeod had severe back and knee impairments, which prevented her from doing her past work, which required being on her feet all day and lifting up to 300 pounds. But she found that Ms. McLeod could do certain light jobs that didn't require any climbing or bending. What do you make of the argument that if they had actually, some of these doctors, had actually looked at the MRI, their conclusion as to what she could do from the report of the MRI might be different? That is, if you're going to rely on a doctor, the other side says the doctor should herself, himself, look at what is being done, not just at the report that is made. That's the argument the other side is making. What do you make of that? In this case, it doesn't undermine the ALJ's findings that it's not clear whether the doctors reviewed the actual MRI. And in part, that's because there's no dispute in this case about what that MRI actually says. There's a general consensus among various doctors who talked about it, and multiple treating sources, in fact, reviewed it, including Mr. Asiedu and Dr. Roth. Mr. Asiedu reviewed it first. He said that it showed internal derangement of the knee. That's a broad term, meaning there's a mechanical problem. That's at page 358 of the record. Dr. Newman described it in similar terms. He also referenced internal derangement, and then more specifically, grade 4 chondromalacia. That's at page 620. And then Dr. Roth also described it in very similar terms. He said it showed grade 4 degenerative joint disease in the patellofemoral joint with quadricep tendonitis. That's at page 400. And Dr. Seldes' description was also similar at page 617. So, again, there's no dispute about what this MRI says. The treating sources reviewed it. If there was still any lingering concern about what it said, then she should have submitted it to the ALJ. But she didn't do that. She said the record was complete, even so. But regardless, both the ALJ and the reviewing doctors adequately considered the MRI findings, both in that the ALJ cited it and that the reviewing doctors cited notes from Dr. Roth and Mr. Asiedu that cited the MRI. But can't we infer, shouldn't we infer from the fact that they did not mention the MRI that they would not have reviewed it? I mean, you argue Dr. Pasek reviewed reports that mentioned the MRI, but your adversary says if he had seen the MRI, he would have mentioned it. The fact that, and if he had seen it and did not mention it, that that in and of itself discredits the reliability of the doctor's report. No, that's not the case here. It's certainly not a necessary inference, especially because Dr. Roth first reviewed the MRI in March of 2021, and thereafter he cited it in every single one of his treatment notes. And then Dr. Pasek reviewed treatment notes through November of 2021, including Dr. Roth's notes, again which cited the MRI, and then Dr. Randall cited two of Dr. Roth's notes that specifically cite the MRI. So there was evidence of the MRI and its specific findings throughout the record. So how do you explain the fact that those doctors upon which the ALJ relied did not seem fit to even mention the MRI? I can't speculate on why exactly they didn't mention it, but they did have access to the relevant evidence that showed all the relevant findings. And in particular, I'd like to distinguish the Burgess case, which opposing counsel cited several times. That case was very different because in that case the ALJ, unlike the ALJ in this case, didn't consider the MRI at all. In fact, the ALJ in that case said that there was no MRI in the record, and the ALJ also discounted the opinion of a treating physician who relied on the MRI and assessed limitations based on the MRI. This was back when the treating physician rule still applied. And then worse, the ALJ also relied on the testimony of a medical expert who said that there was no MRI in the record, when in fact there was. So there's no kind of gross mischaracterization of the record here like there was in the Burgess case. And in addition to citing the MRI, the ALJ and then the various doctors cited the treatment notes, which also showed multiple knee examinations. And those examinations were largely consistent over time. They showed limited range of motion and some tenderness, but only rare swelling or any sensory deficits. There's no mention in the ALJ's decision, is there, of the potential need for surgery? The ALJ does rely on Dr. Selvis' reports about referencing the MRI, but then doesn't follow up by saying, and as a result, Dr. Selvis recommended surgery, right? I don't think the ALJ cited Dr. Selvis specifically, but no, the ALJ didn't reference the recommendation for surgery. The ALJ did reference her testimony that she had not, in fact, had surgery by the time of the hearing. And the ALJ cited and said the evidence of the treatments she did receive in the meantime, including injections, physical therapy, and medications, she found all those treatments helpful. And the ALJ also considered how she was functioning even without the surgery, which included, again, largely consistent examination findings over time. The ALJ discounted the workers' compensation doctor's report as being vague and so on. Was that really the case? Was it that vague? I mean, I'm not saying that it would have necessarily been strong enough support, but I was a bit troubled by the ease with which the ALJ simply said, this one cuts the other way, I don't pay much attention to. Now, it's also the case that the petitioner didn't challenge that, but I'm just wondering. I assume Your Honor is talking about Dr. Semble's report? No. Yes. So Dr. Semble said that Ms. McLeod could do a sedentary job with lifting up to 20 pounds, and the ALJ acknowledged that, but found, but said several things about it. First of all, I mean, that is in the workers' compensation context, so it's different. Yes, we all know it's different, but that doesn't mean that the findings aren't relevant. It isn't determinative. It's a different judgment. But when a doctor gives a report, it's still there on the record and can be looked at. Yes, but he didn't strictly say it's not only that it's a workers' compensation context. It's when someone says that someone can do sedentary or light work, as opposed to spelling out exactly how much they can stand and lift, et cetera. That's not considered an opinion. The ALJ looked at this and pointed out that not only did Dr. Semble say something that was, for the most part, not an opinion, he also made a specific comment about lifting requirements that was an opinion. He said that she could lift up to 20 pounds and had limited bending abilities. That is an opinion. That's consistent with what the other doctors said. The ALJ found that opinion less persuasive because it was an outlier, just like the ALJ also found Dr. Dickerson's finding that Ms. McLeod could do medium work. The ALJ found that that outlier was also not persuasive because it didn't align with the other opinions or with the pattern of evidence throughout the record. So, again, the ALJ considered the evidence from multiple doctors. These doctors did account for the knee findings. They accounted for the other objective evidence in the record. It was reasonable for the ALJ to rely on these doctors to help interpret the mixed evidence, especially when there was no opinion in the record specifically assessing greater functional restrictions. So, ultimately, the ALJ's finding was permissible, regardless of whether another finding might also have been permissible. You don't dispute, I gather, that the ALJ erred in concluding that Dr. Puri and Dr. Shih reviewed the medical records. That one finding was they didn't review the medical records. That doesn't appear to be a significant part of the ALJ's reasoning, because the ALJ said that in a paragraph about Dr. Pasek, who did review the records. Multiple other doctors did review the records as well. And, moreover, Dr. Shih's and Dr. Puri's findings were not significantly different from the other doctors who did review the record. And this is not a case where the ALJ lacked input from doctors who reviewed the record. And did the ALJ mention all of the evidence with respect to the analogic gait? The ALJ seemed to assume that Ms. McLeod had a normal gait, but there was evidence in the record that that was not correct. Well, the ALJ made a qualified statement about generally normal findings as to gait. That statement doesn't tell the whole story, but that's not a legal error because the decision needs to be read as a whole. And the ALJ went on to say more. The ALJ went on to immediately qualify that by saying that they were only generally normal, and then further qualified it by talking about abnormal objective findings repeatedly on pages 15, 16, 17, and 18 of the record. That includes a paragraph describing Mr. Asahiru's findings on page 18. And on that page, the ALJ talks about how Mr. Asahiru made positive findings on clinical examination, and that includes citation to three of his notes where he found antalgic gait. Again, that's on page 18, citing pages 488, 541, and 592. And then the ALJ went on by recognizing Mr. Asahiru's repeated comment that Ms. McLeod was limited in walking, standing, climbing, and the other functions that the doctors identified. So, again, the ALJ looked to the doctors who reviewed Mr. Asahiru's notes, among other evidence, and adopted limitations very similar to theirs. This was a reasonable conclusion on this record. That's all that's required under substantial evidence review, so we would ask that this Court affirm. Thank you. Thank you, Counsel. Thank you. We'll hear again from Mr. Bowes. Thank you, Your Honors. Substantial evidence review, which does not consider the significantly critical medical evidence, is a failure, and that's a failure in this case. I want to draw your attention to exhibit page 17 of the record, where the judge says, the administrative law judge says that Dr. Pasek, Dr. Shih, and Dr. Puri are persuasive. Each doctor supported their findings with a review of the record, to claim its medical record, and by clinical findings on examination. So that didn't happen. I don't know how you extract that statement and say, well. I argue, essentially, that where the ALJ makes a serious mistake of fact, we should send it back even if there is no clear link between the mistake of fact and the ultimate finding. Well, here I would submit that there is a clear mistake. If she needs surgery and the ALJ didn't consider it, and none of the doctors who said she can do light considered it, that would be something. While I'm on Dr. Puri and Dr. Shih, I also wanted to point out that the ALJ incorrectly stated that they had performed straight leg raising tests in their examinations, and that also did not happen. The administrative law judge didn't talk about the multiple instances of positive straight leg raising throughout the file. This is substantial evidence that she has a problem with her lower back and weakness in her right leg. She has a bad left knee and she has weakness in her right leg due to L5 radiculopathy. She doesn't have a good leg to stand on, as it were. The ALJ didn't put particular reliance upon the findings of Dr. Shih and Dr. Puri, so I'm not sure if we were to remand based upon the error with respect to whether Dr. Shih or Dr. Puri reviewed the medical records or not. There's any basis in the record to conclude that the ALJ would have come to any different conclusion. I mean, it may be that there was an error that the ALJ made, but don't you have to show that that error with respect to the review of the medical records by those two doctors was significant? Well, the ALJ and the commissioner both rely on this report. Just as in Burgess, we feel like if they didn't consider a key part of the picture that the ALJ did, it should be sent back so that they could reconsider their opinion. Her condition is far more advanced than they were able to appreciate with a clinical exam. An MRI is a powerful tool. It looks into the area of the body where you're actually having a problem. And we submit that the only person here in the decision who says, oh, she also has a problem with her left, a big problem with her left knee, is the judge. But then she says, but the MRI shows no fracture. That's not a judgment for a lay person to make. And Ms. McCloud worked for 19 years as a certified nursing assistant. She's now at home needing the help from her daughter and her husband to do cooking, shopping, and cleaning. Her subjective complaints about her limited activities of daily living are supported by the objective evidence, MRI evidence, and this court has held that that's a link that needs to be made by the judge. And it's not present here. The judge did not consider that critical evidence. So the two doctors who did look at the MRI concluded that from the fact of the MRI that your client was experiencing severe pain, words to that effect, correct? Dr. Seldes and Dr. Newman both proposed that she could have a surgery to correct it. But the effect of the MRI, what the MRI showed, we've decided what was necessary to address it was severe pain. Yes. And doesn't the ALJ take into account that your client was experiencing severe pain with respect to the knee? She does, but then she says that the evidence before me is generally normal. And number one, the MRI is not normal. The muscle spasms throughout the body are not normal. And the things that she cites, she cites eight instances in the record, one of which doesn't exist. One which is a repeat. And that leaves us with six actual citations to the record for the proposition that the findings were generally normal. Those reports are Dr. Puri. It's the same group of people. Two of them are Dr. Asadu and Dr. Roth, which say that she has severe limitations. That's not normal. She can't say, well, here's the example of the normal limitations that I find. And then when you go to look at those notes, it shows that she has an antalgic gait. There's severe limitations. She has muscle spasms. This is at Exhibit 396. Dr. Roth at page 400 says she has severe limitations in all planes of motion. And then the others that ALJ relies on is Dr. Shi and Dr. Mann and Dr. Passak. None of those three doctors looked at the MRI of the left knee. None of them looked at the EMG of the lower extremities. So it's an incomplete assessment of the file. Thank you, counsel. Thank you both. Thank you. We will take this matter under advisement.